THE MECHANICS' AND TRADERS' BANK, BRANCH OF THE STATE BANK OF OHIO, PLAINTIFFS IN ERROR, v. HENRY DEBOLT, LATE TREASURER OF HAMILTON COUNTY.

The decision in the preceding case of Dodge v. Woolsey again affirmed.

THIS case was brought up from the supreme court of the State of Ohio, by a writ of error, issued under the 25th section of the judiciary act.

It originated in the court of common pleas in the county of Hamilton and State of Ohio, and was an action brought by the bank against Debolt, the nature of which is explained in the following agreed case.

The parties above named hereby agree upon the following facts, upon which a controversy depends between them, and submit the case to the court of common pleas for determination and judgment, in pursuance of section four hundred and ninety-five of the code of civil procedure :—

It is agreed that the plaintiff is a duly authorized banking company, under the act passed by the general assembly of the State of Ohio, on the 24th day of February, 1845, entitled, " An act to incorporate the State Bank of Ohio, and other banking companies," which act is made a part of this case ; that at the foundation thereof, on the 30th day of June, 1845, it assumed

Mechanics' and Traders' Bank *v.* Debolt.

to itself a capital of $100,000, and elected to be a branch of the State Bank of Ohio, and, as such branch, has, from the said time of its organization under said act to the present time, carried on the business of banking in the city of Cincinnati.

It is further agreed that the sixtieth section of the said act is in the words following, namely : " Each banking company organized under this act, or accepting thereof and complying with its provisions, shall, semiannually, on the days designated in the fifty-ninth section for declaring dividends, set off to the State six per centum on the profits, deducting therefrom the expenses and ascertained losses of the company for the six months next preceding, which sum or amount so set off shall be in lieu of all taxes to which said company, or the stockholders thereof, on account of stock owned therein, could otherwise be subject; and the cashier shall, within ten days thereafter, inform the auditor of state of the amount so set off, and shall pay the same to the treasurer of state on the order of said auditor ; but in computing the profits of the company, for the purposes aforesaid, the interest received on the funded debt of this State, held by the company, or deposited with and transferred to the treasurer of State, or to the board of control, by such company, shall not be taken into account ; " and it is further agreed, that the days named in the fifty-ninth section of said act, and referred to in the said sixtieth section, are the first Monday in May and the first Monday in November.

It is further agreed, that on the first Monday in May, 1851, the said bank did set off to the State, according to the provisions of said section, the sum of $195.65 ; and on the first Monday in November of the same year, the further sum of $241.72 ; and it is agreed that the said sums so set off were in fact six per centum upon the profits of said bank during the half years then respectively expiring, after deducting, according to the provisions of said sixtieth section, the expenses and ascertained losses of the said company for the said periods respectively.

It is further agreed, that the auditor of State did, subsequently, direct the said amounts to be paid to the treasurer of State, and that the said order was presented to and paid by the plaintiff on the twenty-fifth day of November, in the year 1851.

It is further agreed, that subsequent to the said payment to the treasurer of state, upon said order of the auditor of state, the auditor of Hamilton county proceeded to list the capital stock of said bank, and its surplus and contingent fund, upon the tax-list of said county, at the sum of $102,462, and added to the said assessment a penalty of fifty per centum, and charged

upon the said sums, amounting in all to $153,092, a tax of $2,296.38, being at the rate of        mills on the dollar.

It is further agreed, that on the 22d day of March, 1854, the said Henry Debolt, treasurer aforesaid, did forcibly, and against the consent and protest of the plaintiff, take from the plaintiff the said tax of $2,296.38, together with the further sum of $114.82, being a penalty of five per centum thereon, making in all the sum of $2,411.20.

It is further agreed, that the said proceedings of said treasurer of Hamilton county, and of said county auditor, were taken in accordance with the provisions of an act of the general assembly of the State of Ohio, passed on the 21st day of March, in the year 1851, entitled "An act to tax banks and bank and other stocks, the same as other property is now taxable by the laws of this State;" and it is agreed, that the first section of the said act is in the words following, namely :—

"That it shall be the duty of the president and cashier of each and every banking institution incorporated by the laws of this State, and having the right to issue bills or notes for circulation, at the time for listing personal property under the laws of this State, to list the capital stock of such banking institution, under oath, at its true value in money, and return the same, with the amount of surplus and contingent fund belonging to said banking institution, to the assessor of the township or ward in which such banking institution is located, and the amount so returned shall be placed on the grand duplicate of the proper county, and upon the city duplicate for city taxes, in cases where such city tax does not go upon the grand duplicate, but is collected by the city officers, and taxed for the same purposes and to the same extent that personal property is or may be required to be taxed in the place where such bank is located; and such tax shall be collected and paid over in the same manner that taxes on other personal property are required by law to be collected and paid over. Provided, however, that the capital stock of any bank shall not be returned or taxed for a less amount than its capital stock paid in."

It is further agreed that the plaintiff, the said Mechanics' and Traders' Bank, has never accepted the said act, nor any part of the said act passed on the twenty-first day of March, 1851, as an amendment to the charter of said bank, nor in any way assented to the same as a valid law, so far as the said act related to the said bank, and to the listing of the capital stock and surplus, and contingent fund of said bank, and to the payment of any tax thereon, different from the tax provided for in the said sixtieth section of the said act passed on the 24th day of February, 1845; and it is agreed that the said first section of the

said act passed on the 21st day of March, 1851, does provide for a tax different from the tax prescribed by the said sixtieth section of the act passed on the 24th of February, 1845.

, The controversy between the parties depends upon the following questions, namely : whether the act passed on the 21st day of March, in the year 1851, entitled " An act to tax banks and bank and other stocks, the same as other property is now taxable by the laws of this State," is contrary to the constitution of the United States, so far as the said act relates to the said Mechanics' and Traders' Bank, imposes upon the said bank any tax. If the court shall determine this question in the affirmative, then judgment is to be entered in favor of the plaintiff against the said defendant, for the sum of $2,411.20, with interest from the 22d day of March, in the year 1854. If the court shall decide the said question in the negative, then judgment is to be entered against the plaintiff for costs. It is agreed that all other questions are waived, and that the judgment to be entered herein shall be subject to review and reversal as in other cases.

Upon this state of facts, the court of common pleas rendered a judgment in favor of the defendant, and gave a certificate that the controversy depended upon the question whether the act passed by the general assembly of Ohio on the 21st of March, 1851, was contrary to the constitution of the United States, so far as the said act related to the Mechanics' and Traders' Bank. The certificate further stated that the supreme court of Ohio decided the said act to be valid, and not contrary to the constitution.

A writ of error brought this judgment before this court for review.

*Mr. Stanberry*, for the plaintiff in error, and *Mr. Pugh*, for the defendant in error, considered that all the questions which arose in this case had been fully argued in the preceding case of Woolsey *v.* Dodge.

*Mr. Perry* filed a brief for the plaintiff in error, entering into an elaborate examination of the points in the case.

Mr. Justice WAYNE delivered the opinion of the court.

Upon our examination of the agreed statement in this case, we find that it is ruled by the cases of The Piqua Branch of the State Bank of Ohio *v.* Knoop, 16 How. 369, and that of Dodge *v.* Woolsey, decided at this term., We therefore reverse the decree of the supreme court, and direct a mandate to issue accordingly.

Mr. Justice CATRON, Mr. Justice DANIEL, and Mr. Justice CAMPBELL, dissented.